IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARNELL EARL | * | |
| Plaintiff, | * | |
| v. | * | |
| OFFICER MARCUS TAYLOR, *et al.* | * | |
| Defendants. | * | Civil Action No. 1:20-cv-01355-CCB |

## MEMORANDUM

Pending before the court in this § 1983 claim is a motion to dismiss brought by the Baltimore Police Department ("BPD"), Mayor & City Council of Baltimore, and former Baltimore Police Commissioners Anthony W. Batts and Frederick H. Bealefeld, III ("Former Commissioners"). The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will grant in part and deny in part the defendants' motion to dismiss.

## BACKGROUND

This litigation arises from the allegedly unlawful arrest of the plaintiff, Mr. Darnell Earl ("Mr. Earl") on October 18, 2015, by Marcus Taylor, Evodio Hendrix, and Wayne Jenkins ("Defendant Officers"), three former members of the Baltimore Police Department's Gun Trace Task Force (GTTF). (ECF No. 1 ¶ 93). According to the complaint, the Defendant Officers pulled over Mr. Earl's vehicle without probable cause, searched the car, and falsely claimed that a firearm was found under his seat. (*Id.* ¶ 95). Mr. Earl was arrested and charged with several firearm offenses. (*Id.* ¶ 96). Mr. Earl pled guilty to these offenses, but after he spent a year-and-

1

a-half in prison, on or about June 16, 2017, the charges were *nolle prossed*. (ECF No. 21 at 14; ECF No. 16 at 22), after the Defendant Officers had been federally indicted for alleged racketeering conspiracy and related offenses. (ECF No. 21 at 1). Mr. Earl submitted formal notice of his intent to file his present claims to the City of Baltimore and BPD on July 24, 2018. (ECF No. 28 at 8).

Mr. Earl alleges that Commissioners Batts and Bealefeld, who were appointed by the Mayor of Baltimore under the advice and consent of the Baltimore City Council, exercised final policymaking authority for BPD at the time of Mr. Earl's arrest. (ECF No. 1 ¶ 11). He additionally alleges that the Former Commissioners, BPD, and Mayor and City Council were on actual or constructive notice of the GTTF's illegal practices and thus had a "policy, custom, or practice" wherein they "promoted, facilitated, or condoned" this conduct through their failure to "supervise, discipline, or train in response to such notice." (*Id.* ¶ 92).

Mr. Earl initiated this action on June 2, 2020, alleging seven counts: (I) False Arrest; (II) False Imprisonment; (III) Malicious Prosecution, (IV) Intentional Infliction of Emotional Distress; (V) Violations of Civil Rights Under the Maryland Constitution Articles 24 and 26; (VI) § 1983 Claim for Violations of Civil Rights Under the United States Constitution Fourth and Fourteenth Amendments; and (VII) § 1983 Claim for Negligent Supervision, Training, and Retention and Custom or Policy of Deliberate Indifference. (ECF No. 1). Of these counts, only the last (Count VII) is brought against BPD, Mayor and City Council of Baltimore, and the Former Commissioners. (*Id.* at 33). On November 17, 2020, BPD, Mayor and City Council, and the Former Commissioners jointly filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, Federal Rule of Civil Procedure 12(b)(1). (ECF No.

16).[1] The motion has been briefed fully and is ready for resolution.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

Plaintiffs have the burden of proving that subject matter jurisdiction exists. See *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In reviewing a Fed. R. Civ. P. 12(b)(1) motion, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for

---

[1] In his response, Mr. Earl requested that the court take judicial notice of four exhibits. Judicial notice will be taken of these exhibits to the extent that they are relevant.

summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court should grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647. When the jurisdictional facts are intertwined with questions of law, however, it may be appropriate to resolve the entire factual dispute at a later proceeding on the merits. *See United States v. North Carolina*, 180 F.3d 574, 580-81 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Bryant v. Clevelands, Inc.*, 193 F.R.D. 486, 488 (E.D. Va. 2000).

## II. Claim Against the Mayor and City Council

Mr. Earl asserts Count VII of his complaint against the Mayor and City Council of Baltimore, contending they are liable under 42 U.S.C. § 1983 for the actions of BPD and its officers. In response, the Mayor and City Council argue they cannot be held liable for BPD's actions or inaction because they lack statutory power over BPD. The court agrees that the Mayor and City Council may not be held liable for the actions or inaction of BPD and its employees.

Under § 1983, individuals may sue a person who violates his or her constitutional rights while acting under the color of law. 42 U.S.C. § 1983 (2012). Plaintiffs may sue local governments under § 1983 if the constitutional violations occurred while the defendants were executing a local government policy or custom. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "Municipal liability" under § 1983, however, "is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). For a § 1983 claim against policymakers, the court must look to state law to determine which officials are legally responsible. *St. Louis v. Praprotnik,* 485 U.S. 112, 124 (1988) ("We begin by reiterating that the identification of policy making officials is a question of state law").

4

In this context, the City of Baltimore "has no power" over the BPD. *Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 26 (2008). Rather, "the Department [BPD] is constituted as an agency of the State," despite operations being partially funded by the City. *Beca v. City of Baltimore*, 279 Md. 177, 180-81 (1977). The State of Maryland, not the City Council or Mayor of Baltimore, retains the exclusive power to set rules and regulations regarding BPD discipline. Pub. Loc. Laws of Md. ("PLL"), Art. 4, §§16-7(7); PLL §16-11; Md. Code, Pub. Safety Art., §§ 3-101, *et seq.*[2] The Maryland Court of Appeals has stated that, "notwithstanding the Mayor's role in appointing and removing the City's Police Commissioner, the Baltimore City Police Department is a state agency," not an agency of the City. *Clark*, 404 Md. at 28.

In response, Mr. Earl argues that the Mayor and City Council had at least "partial control" over the actions of BPD and its officers, and that the court has erred in its prior rulings. (ECF No. 21 at 5). First, Mr. Earl asserts that the City is responsible for BPD, as it appropriated resources and provided equipment and buildings for the Department. The 1971 authority Mr. Earl cites, however, acknowledges City funding alone "could not be construed as a method of indirect control over the police department by the City." *City of Baltimore v. Silver*, 263 Md. 439, 451 (1971). Second, Mr. Earl contends the Mayor and City Council could have removed the Commissioners upon citizen complaints of officer abuses and is thus directly responsible for the continued operations of the Defendant Officers in the GTTF.

The court finds these arguments unpersuasive. The relevant standard for determining which policymakers exert sufficient control over actors is state law. *Praprotnik*, 485 U.S. at 124. In 2014, in the case of *Estate of Anderson v. Strohman*, Judge George Russell addressed

---

[2] Article II of the Baltimore City Charter forbids City interference with BPD affairs: "no ordinance of the City or act of any municipal officer shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner." Charter, art II, § 27.

previously conflicting caselaw and determined that the City of Baltimore is not, for this purpose, in control of the BPD. 6 F. Supp. 3d 639, 646 (D. Md. 2014) (holding "based on governing Maryland and federal law, [] a § 1983 claim cannot be brought against the City for Baltimore police officer conduct because it does not sufficiently control the BPD and cannot be considered to employ Baltimore police officers. Municipal liability under *Monell* cannot attach to the City for the unconstitutional actions of Baltimore police officers"). I agree. *See*, *e.g.*, *Fish v. Mayor & City Council of Baltimore,* No. CCB-17-1438, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018); *Holloman v. Rawlings-Blake, et al.*, No. CCB-14-1516, 2014 WL 7146974, at *4 (D. Md. Dec. 12, 2014). Accordingly, all claims against the Mayor and City Council of Baltimore will be dismissed.

### III. Eleventh Amendment Immunity

Count VII of Mr. Earl's complaint seeks to hold the Baltimore Police Department liable under 42 U.S.C. § 1983. "Under the doctrine of sovereign immunity, neither a contract nor a tort action may be maintained against the State unless specific legislative consent has been given and funds (or the means to raise them) are available to satisfy the judgment." *Balt. Police Dept. v. Cherkes*, 140 Md. App. 282, 305 (2001) (quoting *Catterton v. Coale*, 84 Md. App. 337, 345-46 (1990)). This doctrine protects the State from liability for both ordinary and constitutional torts. *Id.* at 306. As discussed above, BPD is a state agency, which, for the purposes of immunity, is normally treated as if it were the State of Maryland, and thus enjoys the same immunity as the State. *Anderson*, 6 F. Supp. 3d at 643; *see also Cherkes*, 140 Md. App. at 323.

While state law claims against BPD directly are thus barred, Mr. Earl's § 1983 claim remains viable. BPD asserts it cannot be sued because it is an "arm of the state," entitled to sovereign immunity under the Eleventh Amendment even for the purpose of a § 1983 claim,

relying on the established four-factor analysis.[3] In its reply, however, BPD acknowledges that the Fourth Circuit, while never having ruled directly on whether BPD may claim sovereign immunity to § 1983 actions, has assumed (without substantial discussion) that this immunity *does not* attach. *Wiley v. Mayor of Baltimore*, 48 F.3d 773, 776 (4th Cir. 1995) (holding "BPD may be held accountable" in a § 1983 action). In subsequent decisions, judges in this court has frequently found BPD to be sufficiently concerned with local matters, independently funded, interconnected with local government, and autonomous from state government so as not to retain Eleventh Amendment immunity. *Alderman v. Balt. City Police Dep't*, 952 F. Supp. 256, 258 (D. Md. 1997) (applying this analysis to BPD to conclude it was not an arm of the state); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003) (finding BPD to be "too interconnected with the government of the City" to enjoy immunity from § 1983 actions); *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1026 (D. Md. 2019); *Fish*, 2018 WL 348111, at *3.[4]

Therefore, the court determines BPD does not retain Eleventh Amendment sovereign immunity and is a "person" subject to suit under § 1983. As BPD does not retain this immunity, the Former Commissioners necessarily lack immunity as local officials, and are thus also persons

---

[3] These factors include: "(1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State." *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.,* 535 F.3d 300, 303 (4th Cir. 2008) (quoting *Maryland Stadium Auth. v. Ellerbe Becket Inc*., 407 F.3d 255, 261–62 (4th Cir. 2005). The cases cited above finding BPD to lack immunity either make reference to this test or provide reasoning that addresses many–if not all–factors explicitly. Accordingly, the court is not obligated to re-conduct a factor-by-factor analysis and instead relies on the reasoning provided in these past decisions.

[4] The Maryland Court of Special Appeals also has held BPD lacks Eleventh Amendment Immunity from § 1983 claims. *See Blades v. Woods*, 107 Md. App. 178, 182, 667 A.2d 917, 919 (1995) ("We agree. . . and hold that [BPD] is not entitled to absolute immunity from appellant's § 1983 action").

subject to Mr. Earl's § 1983 suit.[5]

## IV. Failure to State a *Monell* or Supervisory Liability Claim

BPD and the Former Commissioners next contend Mr. Earl has failed to plead a *Monell* claim with sufficient factual particularity. Specifically, they assert Mr. Earl has failed to allege the "offensive acts of city employees are taken in furtherance of some municipal 'policy or custom,'" either through a failure to train the Defendant Officers or through condonation of their actions. *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell*, 436 U.S. at 694); *see also Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014). Additionally, the Former Commissioners argue that, to the extent Mr. Earl alleges supervisory liability for the Former Commissioners in their individual capacities, such a claim must be dismissed for lack of factual specificity.

It is unnecessary to rule on the sufficiency of these pleadings now. As § 1983 is not an independent source of rights, but rather provides "a method for vindicating federal rights elsewhere conferred," the liability of BPD and the Former Commissioners is predicated on the existence of a constitutional rights violation by one or more of the Defendant Officers. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). Similarly, supervisory liability under § 1983 is only incurred when a defendant is personally involved in the subordinate's commission of a constitutional violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding a public official "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

---

[5] As BPD is not considered to be an "arm of the state" for Eleventh Amendment purposes, neither are its Commissioners. It is thus unnecessary to examine whether, as Mr. Earl suggests, *Hafer v. Melo* applies to the present defendants, as the Commissioners are local officials lacking any immunity a state official might receive. 502 U.S. 21, 31 (1991).

These claims may be best adjudicated after Mr. Earl's claims against the individual Defendant Officers are resolved. If no active defendant violated Mr. Earl's constitutional rights, he would have no claim against the inactive Defendants. *See Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 320 (D. Md. 1991). The pending motion to dismiss filed by Defendant Officers will be decided, and then the court will address whether to stay and bifurcate discovery. Thus, this motion to dismiss will be denied without prejudice.

V.      **Local Government Tort Claims Act**

BPD and the Former Commissioners contend Mr. Earl has failed to provide notice of his state law claims to BPD, a local government entity, and its employees under the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. Art., § 5-301, *et seq.* (ECF No. 16 at 22). Such notice is mandatory within one year unless the defendant had actual or constructive notice of "(1) the claimant's injury; or (2) the defect or circumstances giving rise to the claimant's injury." *Id.* § 5-304(e).

Mr. Earl did not file formal notice of his claims with the City of Baltimore and BPD until July 24, 2018, (ECF No. 1 ¶ 5), a little more than a month after the one-year window had elapsed since his conviction was *nolle prossed* on June 16, 2017. He now asserts that the BPD and Former Commissioners were on actual or constructive notice of his injury and the circumstances giving rise to it because of the federal indictments and the joint motion to vacate Mr. Earl's conviction which was granted on June 16, 2017. (ECF No. 21-1 at 13; Ex. D at 11). BPD and the Former Commissioners deny such constructive notice, arguing that they were not parties to his joint motion to vacate judgment in his conviction, nor did the indictments, pleas, or convictions of the former Defendant Officers reference the 2015 incident involving Mr. Earl.

The court finds it unlikely that BPD and the Former Commissioners would be placed on

9

notice by court filings in cases to which they were not parties. *Cf. White v. Prince George's Cty.*, 163 Md. App. 129, 147 (2005) (holding even direct notice to sub-department lacking the responsibility to investigate tort claims against the defendant to be insufficient to satisfy the LGTCA notice requirement). Assuming without deciding the federal indictments could have provided notice, Mr. Earl has not shown that his specific case was part of any indictment. Nor did Mr. Earl provide direct notice to the BPD within the statutory period. Accordingly, as the BPD and Former Commissioners have demonstrated a lack of actual and constructive notice within the period prescribed by statute, the court will grant the defendants' motion to dismiss the state law claims for failure to comply with the LGTCA.[6]

## CONCLUSION

For the reasons stated above, the court will Grant in part and Deny in part BPD, Mayor and City Council, and the Former Commissioners' Motion to Dismiss.

A separate Order follows.

__9/29/2021_____        _____/s/_____
Date        Catherine C. Blake
       United States District Judge

---

[6] The court also notes that § 5-304(e) permitting actual or constructive notice was not effective until October 1, 2016, and was not pled in the complaint.