IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DARNELL EARL** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | |
| | * | |
| **OFFICER MARCUS TAYLOR,** *et al.* | * | |
| | * | |
| **Defendants.** | * | Civil Action No. 1:20-cv-01355-CCB |
| | * | |
| | * | |

******

## MEMORANDUM

Pending before the court is a motion to dismiss brought by former Baltimore Police Department ("BPD") Officers Marcus Taylor, Evodio Hendrix, and Wayne Jenkins. The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will grant in part and deny in part the defendants' motion to dismiss.

## BACKGROUND

This litigation arises from the allegedly unlawful arrest of the plaintiff, Mr. Darnell Earl ("Mr. Earl") on October 18, 2015, by Marcus Taylor, Evodio Hendrix, and Wayne Jenkins ("Defendant Officers"), three former members of the Baltimore Police Department's Gun Trace Task Force (GTTF). (ECF 1, Compl. ¶ 93). According to the complaint, the Defendant Officers pulled over Mr. Earl's vehicle without probable cause, searched the car, and falsely claimed that a firearm was found under his seat. (*Id.* ¶ 95). Mr. Earl was arrested and charged with several firearm offenses. (*Id.* ¶ 96). Mr. Earl pled guilty to these offenses, but after he spent a year and a half in prison, on or about June 16, 2017, Mr. Earl was allowed, upon joint motion to vacate judgment, to withdraw his guilty plea and the charges were *nolle prossed*. (ECF 41-7, Transcript of Proceedings to Vacate Judgment, at 3, 5), after the Defendant Officers had been federally indicted for alleged

1

racketeering conspiracy and related offenses. (ECF 41-6, Indictment, at 1). Mr. Earl submitted formal notice of his intent to file his present claims to the City of Baltimore and BPD on July 24, 2018. (ECF 41-1, Notice, at 4).

Mr. Earl initiated this action on June 2, 2020, alleging seven counts: (I) False Arrest; (II) False Imprisonment; (III) Malicious Prosecution; (IV) Intentional Infliction of Emotional Distress; (V) Violations of Civil Rights Under the Maryland Constitution Articles 24 and 26; (VI) § 1983 Claim for Violations of Civil Rights Under the United States Constitution Fourth and Fourteenth Amendments; and (VII) § 1983 Claim for Negligent Supervision, Training, and Retention and Custom or Policy of Deliberate Indifference. (ECF 1). Of these counts, all but the last (Count VII) are brought against the Officer Defendants (*Id.* at 27-32). On March 23, 2021, Defendant Officers jointly filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 41).[1] The motion has been fully briefed and is ready for resolution.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to

---

[1] The defendants named in Count VII also filed a motion to dismiss which was granted in part and denied in part on September 29, 2021. (ECF 48).

relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

## II. Statute of Limitations

The Officer Defendants contend that most of Mr. Earl's claims against them are time-barred by the applicable statute of limitations.[2] In Maryland, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. As noted, Mr. Earl filed his complaint on June 2, 2020. (*See* ECF 1). The Court will address sequentially each count of the complaint the Officer Defendants moved to dismiss as untimely.

### a. Count I: False Arrest

Mr. Earl's false arrest claim accrued on October 18, 2015, the date of his arrest. Accordingly, it is barred by the three-year statute of limitations. *See Heron v. Strader,* 361 Md. 258, 264-65 (2000).

### b. Count II: False Imprisonment

Mr. Earl's state law tort claim of false imprisonment is similarly time-barred by the statute of limitations. "[F]alse imprisonment ends once the victim becomes held *pursuant to such process*

---

[2] The Officer Defendants do not contest that Count III (malicious prosecution) and portions of Count IV (violations of Mr. Earl's civil rights by malicious prosecution and fabrication of evidence) were pled within the three-year statute of limitations.

3

– when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). The Court of Appeals of Maryland has adopted the rule in *Wallace*, summarizing a "series of cases where the plaintiff has been arrested, held, tried, and convicted, only to be released years later," in which "courts have commenced the statute of limitations at the formal start of criminal proceedings." *Prince George's Cty. v. Longtin*, 419 Md. 450, 477 (2011) (citing *Wallace*, 549 U.S. at 390-92 for the proposition that the "statute of limitations for false imprisonment claim commenced to run when [plaintiff] appeared before the examining magistrate and was bound over for trial[,] and not when the plaintiff was released five years later, after his conviction was overturned on appeal") (internal quotations omitted).

As Mr. Earl was arraigned on December 9, 2015, (ECF 41-2, Criminal Record, at 2), his June 2, 2020, complaint was filed outside the three-year statute of limitations for a false imprisonment claim. Accordingly, Count II will be dismissed.

### c. Count IV: Intentional Infliction of Emotional Distress

"The accrual date of an IIED claim can range, depending upon the alleged actions." *Longtin*, 419 Md. at 481. Mr. Earl alleges in Count IV that his emotional distress arose from the actions of the Defendant Officers on the day of his arrest and continued through his prosecution and incarceration on false charges. (ECF 1 ¶¶ 118-123). At the latest, however, Mr. Earl's claim accrued as of the date of his conviction. *Id.* (citing *Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010). Accordingly, it is time-barred.

### d. Count V: Maryland Constitutional Claims

Defendant Officers next contend that Count V, which alleges violations of Articles 24 and 26 of the Maryland Declaration of Rights, should be dismissed as untimely.

In *Longtin*, *supra*, the Court of Appeals of Maryland held that, "[i]n general, constitutional

claims arising from false arrest and imprisonment . . . share a statute of limitations accrual date with the related common law torts." 419 Md. at 480 (citing *Wallace*, 549 U.S. at 389). As Mr. Earl's state constitutional claims regarding illegal "imprison[ment] or disseiz[ure]" arise out of his allegedly false arrest, (ECF 1 ¶ 126), they are time-barred because they were brought more than three years after the accrual date of October 18, 2015.[3] The court will therefore dismiss Count V of the complaint.

### e. Count VI: § 1983 Claims for Fourth and Fourteenth Amendment Violations

In Count VI of the complaint, Mr. Earl alleges that the Defendant Officers committed several Fourth and Fourteenth Amendment violations through their actions on October 18, 2015 and beyond. The Officer Defendants contend that several of these alleged violations, namely (1) false arrest, (2) excessive force, and (3) false imprisonment, are time-barred by the applicable statute of limitations.

#### 1. False Arrest

In § 1983 claims for damages for false arrest, the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. "[The] length of the statute of limitations [] is that which the State provides for personal-injury torts." *Id.* at 387. "Congress has not adopted a specific statute of limitations for actions brought under 42 U.S.C. § 1983. Instead, the analogous state statute of limitations applies." *Perry v. Pamlico County*, 88 F. Supp. 3d 518, 529 (E.D.N.C. 2015) (citing *Burnett v. Grattan*, 468 U.S. 42, 48–49 (1984). While state law provides the length of limitations, federal law determines the date of accrual. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996); *Perry*, 88 F.

---

[3] To the extent Count V could be considered an allegation of an excessive force claim, this too would be time-barred.

5

Supp. 3d at 529. "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Brooks*, 85 F.3d at 181 (quoting *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 117 (1996)). As is the case in the analogous state-law tort claim of false arrest (Count I), the accrual date is that of Mr. Earl's arrest: October 18, 2015. Accordingly, the three-year statute of limitations expired prior to the filing of the complaint on June 2, 2020.

### 2. Excessive Force

Any excessive force claim Mr. Earl alleges arises from his October 18, 2015 arrest. The statute of limitations for battery, an analogous claim, is also three years. *See Ford v. Douglas*, 144 Md. App. 620, 624-25 (2002). Thus, this claim is also time-barred.

### 3. False Imprisonment

For the purposes of accrual, "false imprisonment ends once the victim . . . is bound over by a magistrate or arraigned on charges." *Wallace* at 389. As Mr. Earl was arraigned on December 9, 2015, the three-year statute of limitations period since the formal start of his criminal proceedings had run before the filing of the complaint on June 2, 2020.

Accordingly, Mr. Earl's § 1983 claims arising under the U.S. Constitution in Count VI pertaining to false arrest, excessive force, and false imprisonment will be dismissed as untimely.

### III. Malicious Prosecution Claims (Counts III and VI)

Mr. Earl's remaining claims not barred by the statute of limitations are Count III, a state law claim for damages for malicious prosecution, and the portion of Count VI that states a § 1983 claim for damages for malicious prosecution, violating Mr. Earl's rights under the Fourth Amendment, and for fabrication of evidence, violating Mr. Earl's rights under the Fourteenth

Amendment.

### a. The LGTCA's Notice Requirement Bars Count III

In their motion to dismiss, the Defendant Officers contend that Mr. Earl failed to meet the notice requirements of the Maryland Local Government Tort Claims Act (LGTCA). Md. Code Ann., Cts. & Jud. Proc. Art., § 5-301, *et seq.* The LGTCA provides that: "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." *Id.* § 5-304(b)(1). Such notice is mandatory within one year of injury unless the defendant had actual or constructive notice of "(1) the claimant's injury; or (2) the defect or circumstances giving rise to the claimant's injury." *Id.* § 5-304(e). Pleading compliance with the LGTCA's notice requirement is a prerequisite to suit. *Longtin*, 419 Md. at 467.

In his complaint, Mr. Earl pleads that he complied with the notice requirement of the LGTCA by giving timely notice. (ECF 1 ¶ 5) ("Plaintiff has satisfied the notice claim prerequisites to suit as specified by . . . the Local Government Tort Claims Act []. Plaintiff sent timely notice of his claims to the Baltimore City Solicitor, the Maryland State Treasurer, and the Baltimore City Police Department by certified mail. . . on July 24, 2018"). This notice, however, is not timely under § 5-304, as it was filed a little more than a month after the one-year window had elapsed since his conviction was *nolle prossed* on June 16, 2017. *See Heron*, 361 Md. at 265 (holding that, for malicious prosecution claims, the notice period under the LGTCA began to run when the plaintiff's proceedings terminated in his favor in the underlying criminal case).

In his response to the Officer Defendants' motion to dismiss, Mr. Earl now asserts for the first time that the Officer Defendants and City Solicitor were on actual or constructive notice of his injury and the circumstances giving rise to it because of the federal indictments and the joint

7

motion to vacate Mr. Earl's conviction, which was granted on June 16, 2017. Mr. Earl contends that this actual or constructive notice of his injury thus meets the requirements of § 5-304(e).

It is well established that a plaintiff may not amend his complaint through a memorandum and is bound by the allegations contained in his complaint. *See Stahlman v. U.S.*, 995 F. Supp. 2d 446, 453 (D. Md. 2014); *Zachair, Ltd. v. Driggs,* 965 F. Supp. 741, 748 n. 4 (D. Md. 1997). As Mr. Earl explicitly pled that he met the LGTCA notice requirement through his July 2018 mailing, he foreclosed any argument that he instead qualified for an exception to the statute's notice requirement. In any case, even if Mr. Earl sufficiently pled this exception to the LGTCA's notice requirement, the Officer Defendants could not fairly be considered to have been on either actual or constructive notice of Mr. Earl's malicious prosecution claim. Mr. Earl's initials (D.E.) did not appear among the victims' initials on the Officer Defendants' indictment. (*See* ECF 41-8).[4] The Officer Defendants could not reasonably be held to be on notice of potential suit from every individual arrested during the time they were part of the GTTF.

As Mr. Earl failed to provide the Defendant Officers timely notice under § 5-304(b) of the LGTCA and has not otherwise properly pled or met the exception to the requirement, Count III will be dismissed.[5]

### b. Count VI: Malicious Prosecution and Fabrication of Evidence

The Defendant Officers raise two arguments for dismissal of Mr. Earl's remaining § 1983 claims of malicious prosecution and fabrication of evidence in violation of his Fourth and Fourteenth Amendment rights: first, that the *nolle prosequi* which terminated Mr. Earl's criminal

---

[4] The court does not address whether inclusion of Mr. Earl's initials would have been sufficient notice.

[5] In addition to being barred by the statute of limitations, Mr. Earl's other state law claims also are barred by his failure to comply with the LGTCA's notice requirement.

8

proceedings cannot serve as the basis for these civil claims as it was not indicative of his innocence, and second, Mr. Hendrix asserts that his conduct is not the but-for cause of Mr. Earl's injuries.

### 1. Mr. Earl Sufficiently Alleges that His Underlying Criminal Proceeding Was Favorably Terminated

To successfully raise a § 1983 malicious prosecution claim under the Fourth Amendment, a plaintiff must allege that he was "seized . . . pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor." *Brooks*, 85 F.3d at 183; *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused"). The Fourth Circuit has defined favorable termination as being satisfied when "the criminal case against the plaintiff has been disposed of in a way that indicates the plaintiff[']s innocence." *Salley v. Myers*, 971 F.3d 308, 313 (4th Cir. 2020) (quoting *Snider v. Seung Lee*, 584 F.3d 193, 202 (4th Cir. 2009).[6]

Section 1983 actions alleging fabrication of evidence also require resolution of the plaintiff's underlying criminal case in a manner favoring the accused. *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (analogizing fabrication of evidence claims to the common-law tort of malicious prosecution). Accordingly, both claims are analyzed concurrently under this common standard.

---

[6] On October 12, 2021, the Supreme Court heard oral arguments in *Thompson v. Clark*, a case addressing the current circuit split regarding whether a plaintiff alleging unreasonable seizure pursuant to legal process in a § 1983 action must show that the former criminal proceeding against him has "formally ended in a manner not inconsistent with his innocence," or that the proceeding "ended in a manner that affirmatively indicates his innocence." *See Thompson v. Clark*, No. 20-659, ___ S. Ct. ___, 2021 WL 850622 (U.S. March 8, 2021). Because the court finds that Mr. Earl has alleged sufficient details to survive the motion to dismiss under the stricter "affirmative indication" standard, as currently adopted by the Fourth Circuit, *Thompson*'s outcome is unlikely to be determinative with respect to the present motion to dismiss.

Whether a criminal case's termination is indicative of a defendant's innocence requires examination of whether "[t]he circumstances surrounding the abandonment of the criminal proceedings [] compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Nicholas v. Wal-Mart Stores, Inc.*, 33 F. App'x 61, 65 (4th Cir. 2002).[7] Dismissal due to witness unavailability, or abandonment of charges as part of a compromise, for example, have been held by various courts not to meet this standard. *See Salley*, 971 F.3d at 313; *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997). As § 1983 malicious prosecution claims sound in common law, the court considers the approach of the Maryland state judiciary in evaluating the effect of a *nolle prosequi* on subsequent civil proceedings. *See Salley*, 971 F.3d at 313 (examining South Carolina law to assess when a *nolle prosequi* establishes favorable termination). While it has not ruled precisely on whether a *nolle prosequi* standing alone satisfies the favorable termination element of a malicious prosecution claim, the Maryland Court of Appeals has held more generally that "the evidentiary effect of a *nolle prosequi* must depend on the circumstances of its entry." *Exxon Corp. v. Kelly*, 281 Md. 689, 695 (1978). Thus, the court is left with a fact-specific inquiry into the circumstances surrounding the abandonment of the case against plaintiffs whose criminal proceedings were *nolle prossed*. *Nicholas*, 33 F. App'x at 65.

The Defendant Officers contend that Mr. Earl's *nolle prosequi* does not indicate his innocence with respect to the charges brought against him. Mr. Earl entered a guilty plea, uncoerced, with his attorney present, and the court found it to be knowing and voluntary. (ECF 41-3, Transcript of Guilty Plea Hearing, at 14, ll 10-14). Mr. Earl did not contest the government's statement of facts proffered after his plea was accepted. *Id.* Last, Defendant Officers analogize the

---

[7] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

10

*nolle prosequi* entered in Mr. Earl's case after the State deemed them to be unreliable witnesses to the facts of *Holmes v. City of Wilmington*, a District of Delaware case where the court granted summary judgment against a § 1983 malicious prosecution plaintiff whose criminal case was *nolle prossed* after two witnesses failed to identify the defendant and a mistrial was declared. 249 F. Supp. 3d 781, 784 (D. Del. 2017). There, the court rejected the plaintiff's theories that the state abandoned prosecution because it lacked evidence to proceed, rendering the *nolle prosequi* indicative of his innocence. *Id.*

In response, Mr. Earl notes that, in Maryland, the entrance and acceptance by the court of a guilty plea is not categorically an admission of guilt. Md. Rule 4-242(c). And, he asserts, defendants routinely accept guilty pleas to avoid a potentially much longer sentence if they were found guilty after trial. Mr. Earl never agreed to the statement of facts presented by the State, nor did the court rely on this recitation when accepting Mr. Earl's plea. (ECF 41-3 at 13-14). Further, this plea was later withdrawn upon joint motion by Mr. Earl and the State. (ECF 41-7 at 5, ll 1-4). Last, Mr. Earl cites *Hines v. French*, a Court of Special Appeals of Maryland decision where the *nolle prosequi* of a charge of negligent driving, based on an agreement between the prosecutor and defendant, was considered a dismissal that "ended in [the plaintiff's] favor." 157 Md. App. 536, 554 (2004). Mr. Earl's *nolle prosequi* was unconditional and not the result of a compromise; instead, it was entered because the Defendant Officers' indicted conduct called into question the testimony of the only witnesses against him.

The complaint alleges sufficient facts regarding the circumstances of Mr. Earl's *nolle prosequi*, that, viewed in the light most favorable to the plaintiff, raise a right to relief above the speculative level. While conflicting factual circumstances may weigh for and against the plaintiff's contention, and the issue may be revisited on summary judgment, Mr. Earl has sufficiently pled

that his *nolle prosequi* was a favorable outcome indicative of his innocence for his malicious prosecution and fabrication of evidence claims in Count VI to survive a motion to dismiss.

### 2. Cause Exists with Respect to Officer Hendrix

With respect to the § 1983 fabrication of evidence claim, Mr. Hendrix asserts that Mr. Earl cannot establish that Mr. Hendrix's conduct resulted in his deprivation of liberty, a necessary element of the claim. *See Martin v. Conner*, 882 F. Supp. 2d 820, 847 (D. Md. 2012). In support of his position, Mr. Hendrix asserts that his name does not appear in the State's proffer of facts given at Mr. Earl's guilty plea hearing. (ECF 41-3).

Mr. Earl's complaint, however, contains several factual allegations against Mr. Hendrix, including details about his membership in the GTTF alongside Mr. Taylor and Mr. Jenkins, and his role in the traffic stop and search of his vehicle on October 18, 2015. (ECF 1 ¶¶ 2-3, 93, 95, 99). Simply because the State's statement of facts did not include Mr. Hendrix's name does not mean that Mr. Earl could not present evidence after discovery documenting, as he claims, that Mr. Hendrix played a role in causing his arrest and resulting prosecution. Accordingly, Mr. Earl's fabrication of evidence claim against Mr. Hendrix survives this motion to dismiss.

### CONCLUSION

For the reasons stated above, the court will Grant as to Counts I, II, III, IV, V, and VI (as it pertains to false arrest, false imprisonment, and excessive force), and Deny as to Count VI (as it pertains to malicious prosecution and fabrication of evidence) the Officer Defendants' Motion to Dismiss.

A separate Order follows.

11/2/21
Date

_____
Catherine C. Blake
United States District Judge